Good morning, ladies and gentlemen. Judges Schroeder and Bumate and I welcome you to the Ninth Circuit. Just a few housekeeping matters before we start. Judge Bumate is here with us on video, and I know that we'll have some attorneys appearing that way as well. I generally call the cases in the order that they're on the calendar, but I handle the I think we have four argued cases today. Next to your case, there is a designation of how much time you have. If you are the appellant, that is your total time, including any time you wish to reserve for rebuttal. So you're responsible for your time, and the clock counts down, and then when it goes up, it doesn't mean I gave you more time, it means you've moved into overtime. However, I know you all came here to say certain things, and we hope that you get to say them, but we also have questions for the most part, and I want to make sure that my colleagues have all of their questions answered, because we have the responsibility of deciding this case, your particular case. So if your time has expired and a judge is asking you a question, you don't need to ask permission to continue. Please continue to answer our questions, and even if it's a really hard question, you can't say my time's up and run back to the council table. So that's basically how we will proceed. The first submitted matter on calendar is Paschall v. 21-1234 submitted on the briefs and will be submitted as of this date. The second case is Rivera v. Merrick Garland. That is 21-1336. That's submitted on the briefs and will be submitted as of this date. The first matter on calendar is John Pamplin v. Lucas, case number 22-15284. I believe that the appellees are on video, and I think we have the appellant as present here in court. Each side has ten minutes, and so I will just say in advance so I won't forget later, and I know I speak on behalf of my colleagues as well, even though the appellant is not part of our pro bono program, I'm assuming that you're representing pro bono, and so we appreciate everyone that comes to court, whether you're pro bono or not, but we also have to have representation on both sides in cases that we have to decide, and generally speaking, if well done, it makes our job easier to have lawyers on both sides. So we're ready to proceed on that. Can everyone hear okay that's on video? Can you hear okay, Judge Bumate? Yes, I can. Thank you. And I think it's Ms. Clinton. Can you hear okay? All right. Can you hear everything okay, too? Okay. Go ahead. Good morning, Your Honors, and may it please the court, Sophie Angelis. Keep your voice up a little. You have a very put on your outdoor voice. Good morning, Your Honors, and may it please the court, Sophie Angelis for the plaintiff appellant, Mr. John David Pamplin. I'd like to reserve two minutes for rebuttal. How long? Two? Two minutes, please. Okay. I'll try to notify you. I'm looking at it, but it's your responsibility to keep track of time. Go ahead. My client is disabled. He has a number of conditions, including dropped foot and right lower back and hip injuries that make it difficult for him to walk. In spite of that fact, the Nevada Department of Corrections classified him to a housing unit on a hill at Warm Springs Correctional Facility. So my client was housed on a hill and Well, isn't, if I have the context correctly, this is the very first day that your client got transferred to another facility that he complained after he had just gotten transferred there because of a prior complaint, right? Yes. I think the reason why he was transferred there is not entirely clear from the record, Your Honor, but it is true that he was transferred to Warm Springs, and as soon as he arrived, he notified defendants that he needed an accommodation. That he had what? He notified defendants that he needed an accommodation as soon as he arrived. So my client was placed on this housing unit and on the hill. The prison's program services and activities were at the bottom of the hill, which meant that for my client to do pretty much anything outside his cell, he needed to walk down the hill and then back up again. Because of his disabilities, this caused him pretty significant pain, so he asked for an accommodation. He proposed three different things that defendants could do. He proposed they could transfer him to a different facility, transfer him to the lower yard, or put him in administrative segregation. So I think we know the facts because we read everything before. Since we don't have a lot of time, I'm just going to jump in and say, given the fact that the district court dismissed Mr. Pamplin's claims against the institutional defendants without prejudice, why didn't Mr. Pamplin at least attempt to amend his complaint, and why shouldn't we consider Mr. Pamplin's failure to even attempt to file an amended complaint a waiver? Right. So, Your Honor, I think two responses to that question. One is that OMD was dismissed with prejudice, so the Offender Management Division, which is a subdivision of NDOC, was dismissed with prejudice. The other is that this is, you know, the case proceeded against two nurses in their official capacity, which is the same thing as proceeding against NDOC, or at least should be considered that way if this court thinks that the proper defendant is before us now. And the amendment in that case would have been redundant if my client had tried to amend in order to add in the correct defendant. What was the, who should he have named as the correct institutional defendant? NDOC, Your Honor, is the correct defendant to the suit. So my client tried to name them. He listed in the caption of the complaint, OMD, which is a subdivision of NDOC. And then in, you know, he was given a pro se complaint by the district court, which requires plaintiffs to enumerate the different defendants, but also prompts them in this case to list a title for that defendant. So the form is really set up for identifying defendants to a Section 1983 case. What does administration refer to in his complaint? So I think, Your Honor, given this court's background principle of construing complaints to name the defendant that makes sense for this kind of suit, administration refers to NDOC. That's the defendant that makes sense in the suit. Well, are there individual defendants, too, the nurses? Right. So the nurses are the named defendants. They are also the proper defendants to his ADA claim, which we are not appealing. Are they just for the ADA claim or are they? Oh, I'm sorry. They're proper defendants to the Eighth Amendment claim. Yeah, my apologies, which we are not appealing. OK. But you're saying you're not prejudiced by the dismissal of the institutional defendants because the nurses are sufficient. Is that your argument? Well, Your Honor, I think there was clear legal error by dismissing the institutional defendant. I think because suing a defendant in their official capacity is the same as suing a nurse. It is a little funny and maybe a little messy area of the law, but I think that's pretty clear. So I think the problem with the district court's order at the screening stage is that the district court misunderstood who the correct defendant is to an ADA lawsuit, which just means that during discovery and then during their analysis at the summary judgment stage, they were focused exclusively on the nurses when, in fact, because the proper defendant to an ADA claim is NDOC, the conduct of any of its employees would make it liable, could make it liable for failure to accommodate. Well, sometimes when people complain about everything all the time that, you know, people maybe listen a little bit less, but there is the theory that a stop clock is right twice a day. So what I see as your most salient area has to do with whether there was some misunderstanding about whether this was an ADA or an Eighth Amendment or the standard of review on deliberate indifference. So what is your best authority that Mr. Pamplin's request to be moved to a different housing constitutes a request for accommodation as opposed to medical treatment? You know, when people complain all the time, this is part of the problem. Right, Your Honor. I think to that point first about his complaint, there's no dispute that he was entitled to a flat yard restriction, that he needed one. Well, I think that they said they didn't know about that, that it was not in his file. Is it in his file? He says yes. He says, but didn't they enter the file and it's not there? No, Your Honor. So in defendant's supplementary excerpts of record, they point to medical classification forms. So those medical classification forms indicate that they're set up like a checklist and certain things are checked off. So what's checked off for him is that he has a barrier-free restriction and that he should be on the lower level and I believe on the lower bunk. There is no box for free or for flat yard restriction. So defendants want us to look at that record and say Excuse me, for what kind of restriction? A flat yard restriction, Your Honor. So it's not clear from the record Flat yard. Yes. It's not clear from the record what the difference is, but it is clear that there is a difference. Defendants want us to read that medical classification form and say the fact that there is not a mention of a flat yard means that he didn't have one on his record. But that just can't be, Your Honor, because the form doesn't indicate that he didn't need one. It instead indicates that he had several things that he needed, which include restrictions to a lower level unit. He was pro se below, right? Correct. He was pro se below. And you're representing him on appeal. Is that correct? Yes. If we send this back, because there seems to have been some confusion, are you going to continue to represent him? That's our intention, Your Honor. No one in my office is barred in Nevada and I'm not either, so we would need to look for local counsel. But assuming we can find that, that's our intention. So your organization can't represent him when it goes back, but you will try to find somebody who can? Is that what you're saying? No, Your Honor. We'd like to. We just need to find local counsel in order to be able to do that. Oh, to local counsel. Okay. Yes. Judge Callahan, back to your question about why transfer to another institution is an accommodation as opposed to medical treatment. This Court has considered that problem a number of times over the last couple of years. There seems to be some confusion among the District Courts about this issue as well. So whatever the line is between those two things, this Court has said that a wheelchair is an accommodation, that a lower bunk restriction is an accommodation. If a lower bunk restriction is an accommodation, then a flat yard certainly should be an accommodation. And I'm happy to talk more about that. Okay. I think Judge Bumate may have another question. Do you? Just a quick question. Is the accommodation he's asking for a transfer to a different unit at the same prison, or did he want to be transferred to a different prison? He named three possible accommodations, Your Honor. He said, transfer me to another institution, transfer me to a housing unit on the lower yard, or transfer me to administrative segregation, which is solitary confinement. And I think that goes to show exactly how difficult his situation was, having to walk up and down that hill. So what you're saying, he didn't ask to be transferred to a Four Seasons with ramps. Right. And room service. No, Your Honor. Okay. All right. We used to... I'll give you two minutes for a rebuttal. Thank you. All right. Thank you. All right. We'll hear from the appellees. Good morning. Good morning. May it please the Court, Sabrina Clinton on behalf of the defendant appellees in this matter. Your Honors, none of the issues about which the appellant has complained warrant a reversal of the court's order. The court properly dismissed the institutional defendants because they were not properly named in the complaint. And although pro se plaintiffs are given liberal pleading standards, they still have to satisfy the bare requisites. Well, okay, but here it's fairly clear that Mr. Pamplin's pro se complaint, despite its deficiencies, that he ultimately sought relief from the Nevada Department of Corrections. Was it the district court's... Was the district court required to advise him on how to amend this complaint to properly plead against the person since he was pro se? No, the district court had no obligation to advise him as to the proper entity to name. However, the order did point out specifically two deficiencies in his complaint, the overlapping of the collective referring to institutions as well as interchangeably referring to administration OMH. And it was clear for the order that the court was sending a message to clarify that issue. However, the plaintiff never, as discussed earlier, moved to amend the complaint to properly identify any of the defendants. In their brief, the appellate contends that the lack of having NDOC listed as a defendant impacted their ability to conduct discovery. But the record doesn't substantiate that claim. They served discovery on the nurses that were parties. It was responded to, and his requests, in some instances, were rejected, not because of what he was requesting. Either the documents did not exist, or he was asking for impermissible discovery, requesting essentially that the nurses engage in activities of hiring a photographer or taking measurements of the facility. So those are... With regard to the discovery, that had no impact on his ability to attempt to ascertain the proper entities. Well, there seemed to be some conflation on the indifference standard for ADA and Eighth Amendment. And Simmons v. Navajo County holds that the ADA prohibits discrimination because of a disability, not inadequate treatment for a disability. And in what way did people Pamplin request for relocation from his housing unit constitute a medical treatment? So if... I'm seeing some ADA here, and that's a completely different standard on indifference than medical treatment. Well, in their initial opening, appellants focused on his request for those items, but that wasn't all that he requested. Commiserate with those requests were indications that he was in pain and he wanted treatment for pain and his suffering, et cetera. It wasn't limited to an accommodation of a transfer. And in response to that, the nurses in their official capacity advised the appellant appropriately the steps to take to address his concerns, whether it was for treatment or for accommodations. And that process proceeded and ultimately he was treated and he was transferred. Well, that wasn't... Okay, but what authority holds that if a prisoner requests both medical treatment and accommodation from a prison, it can be treated as only requests for medical treatment, which I think that's an argument that they're making here, and that the district judge may have treated it that way. So I would like your response on that. I don't believe that it's the case that because he asserted an accommodation and a treatment that it was only treated as a medical treatment. In this particular instance, in assessing the court focused and emphasized the current standard in Simmons, which this jurisdiction follows. And in looking at that case and the cases that are addressing it, in instances where it's more than just an accommodation, it's construed as a possible attempt using the Eighth Amendment as an end run around the ADA. And so in that light, in this instance, it wasn't just limited to accommodations, but even construing it as accommodations, he was accommodated. When the nurses received notice of his complaints, they commenced an investigation which the deliberate indifference standard looks at, no matter if you're looking at the deliberate indifference under the Eighth Amendment or the ADA, their actions satisfied both standards. They received the notice, they commenced an investigation by reviewing his file, and the records that counsel was referring to earlier, she was emphasizing that there's no box for a flat yard restriction. Well, there's no box for a flat yard restriction because there is no such restriction. The only restriction is a barrier-free restriction. You make a good point about the merits of the ADA claim that he might not have a viable one, but that was not reached by the district court because he kicked it out on threshold matters. So, should we remand for the district court to consider those merits arguments you're making? I don't believe it's necessary because of the fact that under the record, the court can make its decision based on the record as it exists, and the record as it exists now supports a determination that either under the Eighth or the ADA, there was no deliberate indifference by the nurses individually or in their capacity as representatives of institutional defendants. Well, some of the arguments you're making, are they based off of any disputed facts, or are they all in light of favorable of Mr. Pamplin? The arguments are not based on material disputed facts that would warrant reversing the district court's grant of summary judgment in favor of the defendants. If we were to remand this action to the district court, we would require Mr. Pamplin to attempt to proceed against the institutional defendants. Could you raise a sovereign immunity defense under United States v. Georgia? Off the top of my head, I don't recall the holding in that case. As I understand it, under the ADA, sovereign immunity typically doesn't apply to institutional defendants, but in this case, the substance of it, it's inconsequential because construing the nurses in their official capacity, the arguments and the merits would be the same. Even construing NDOC or having NDOC as the named party, I believe the court would reach the same conclusion because none of the evidence provided, none of the information provided by the appellate demonstrates deliberate indifference in processing his claim. One point I'd just like to reiterate to the court, in the process of doing the investigation and encouraging him to seek medical and get review, the records reflect that he missed two scheduled appointments, and the records that record is in supplemental excerpts of record 005. It was a January 2019 entry, and that entry... One last question. Do you agree with the appellant that it doesn't matter that the NDOC is not a named party because the nurses sued in their official capacity necessarily means that NDOC is present in this lawsuit? Under these facts, yes, I would agree. Okay. Thank you. Okay. Your time's expired, but if you want 15 seconds to wrap up, or if you're done, you're done. That's okay too. Sure. I'll just take the 15 seconds. I think it's clear from the record and the briefing that even viewing the court's decision that there was no instance of reversible error that would warrant reversing summary judgment in favor of the parties. Thank you. Thank you. All right. We'll hear from the plaintiff appellant. Thank you, Your Honors. I want to just start with the question you asked Judge Callahan about sovereign immunity. This court has held in Dare and Feifer that the ADA abrogates sovereign immunity, so that would not be something that defendants would be able to raise as a defense if this was remanded. We've been discussing a little bit the correct defendant to the suit. Our position is that this court could consider NDOC to currently be the defendant to the suit, but we think the cleanest thing would be just to reverse the screening order because there was clearly some sort of misunderstanding about who the correct defendant was that sort of had implications through the whole proceeding. I'm also happy to talk about deliberate indifference as that was something we were discussing. The ADA requires that once an entity is on notice of a potential need for an accommodation that they conduct an investigation, and at summary judgment, it's defendant's obligation to present a record that undisputedly shows that that's the case, and defendants just haven't put that record before this court. So it's possible that on remand, if what this court decided to do was reverse the grant of summary judgment, allow this case to go to trial, defendants would be able to make many of the arguments that they're making now. They would be able to argue, for instance, that the delay was my client's fault and that in light of his conduct, having to wait for five months for this routine sort of accommodation was reasonable, but those are issues of fact that are properly left to a fact finder. Okay. Judge Gumete, did you have an additional question? Yeah, just one quick question. So if we reversed on the screening and the improper dismissal of the ADA, couldn't they bring another summary judgment motion? It doesn't have to go right to trial. Yes, correct, Your Honor. Yes. I was referring if this court decided only to reverse the grant of summary judgment, but if you just reverse screening, then yes, of course. Got it. Okay. All right. Thank you both for your argument, and this matter will stand submitted.
judges: SCHROEDER, CALLAHAN, BUMATAY